All right, Mr. Durio, you're up. Thank you, Your Honors. Stephen G., also known and sometimes referred to as Buzz Durio. I see that in transcripts and records sometimes. Life in Louisiana, Representative Darryl Broussard. Mr. Broussard is here. Career banker. Fifty-six at the time these events began to occur. Has not been employed since. This is an unusual case because it involves so many claims and because it involves a merger of a bank. And there's a lot of confusion in the case and in the record. And one of the reasons we requested oral argument was to distinguish between the two entities, the Merge R Bank and the Merge E Bank, because I think to a large extent the trial court lost track of that. I'll try to do my best to point out where there's differences. We have made five assignments of error in taking the court at its word. I have tried to focus on only three for the purpose of this primary argument. I think I've reserved five minutes for rebuttal. The first three are, first, the intentional interference claim and the lack of malice. That was a summary judgment disposition before trial by Judge Darney. Secondly, the computer fraud claim where Judge Hanna, after trial, found that Mr. Broussard had acted without authorization. And lastly, the attorney's fees. The attorney's fees is kind of a double-edged sword because we were awarded attorney's fees under a provision in the CCSA, which is the conversion bonus document that TESH had created for Mr. Broussard's benefit, and it provided for arbitration and it provided for attorney's fees, regardless of outcome. I'm not going to take them in that order as they're presented in the brief. I'd like to take the attorney's fees issue and one of the pretrial rulings by Judge Darney first. And like I said, it's a double-edged sword because while we're appealing the denial of attorney's fees for the litigation, we were awarded about $6,000 of attorney's fees, all of which had been incurred before the case, before in arbitration, before the parties agreed to substitute litigation for the arbitration. We were not awarded the vast majority of the attorney's fees that were incurred in the case. Now, the double edge is that Iberia has appealed that issue and said we shouldn't have gotten anything under Louisiana Statute 6286, which had been discussed pretrial and which Judge Darney had dismissed. So that issue I will discuss first. The CCSA, the agreement between Tesh and Dow Broussard, provided very clearly in an attorney's fee provision, coupled with an arbitration, that all costs and expenses, including reasonable attorney's fees, all costs and expenses, including reasonable attorney's fees, arising from such dispute, proceedings or actions would be reimbursed to Mr. Broussard, regardless of the outcome. Now, at a certain point, Your Honors, we had a number of proceedings here. The first was an arbitration instituted by Iberia. The second was a state court lawsuit introduced, I'm sorry, instituted by Broussard. The third was a federal action under the Computer Fraud and Abuse Act instituted by Iberia against two individuals. One, Mike Pelce, a person who actually did take some information from Iberia, and the other, Mr. Broussard, who didn't take anything from Iberia, and ultimately that case was tried on the theory that he deleted files on his computer. But in this morass of litigation, trying to find a forum where we could litigate it all at one time, because this is a life or death kind of situation, Mr. Broussard, it had to be litigated. We didn't want to litigate it twice. We didn't want it to go on for years. We agreed to dismiss the arbitration proceeding and the state court lawsuit, that is, Iberia would dismiss the arbitration, Mr. Broussard would dismiss the state court lawsuit, so that the claims in those two actions could be brought into the federal court and litigated in the federal court. There was nothing explicitly said in that letter of agreement at all about attorney's fees, nothing. All claims were reserved. In fact, what the letter of agreement did say was that the defense of exclusive arbitrability was not reserved, having been waived by the dismissal of the arbitration proceeding. That's noted in the agreement itself. The first time this limitation arose, or the argument arose, Judge Daugherty, in a pretrial ruling, dismissed it and said, after looking at the letter of agreement, the original agreement and so forth, that Iberia did not show as a matter of law that, quote, attorney's fees can only be awarded as a consequence of an arbitration, comma, not a court proceeding, end quote. Now, in the subsequent ruling, she allowed Iberia to file that same motion again. In the subsequent ruling, much closer to trial, she ignored her first ruling completely. There's no allusion in the subsequent ruling to the original ruling, none, no reference whatsoever. There's no reference back to the breadth of the letter of agreement or the breadth of the original agreement. It's simply a different ruling. She emphasized in her opinion, in italics, that the attorney's fee proceeding was limited to arbitration. But she uses italics. It's not in the document. It's in her opinion. And so there's not a whole lot here on that issue. Frankly, we think that Judge Daugherty was simply wrong in her second ruling because she was right in her first ruling. There was also another ruling, while we're on this issue, there was also another motion to eliminate any attorney's fees at all, based upon an argument that indemnity was prohibited for a banker. A banker could not receive an indemnity contract. That's based on 6286, LARS 6286, part of our bank holding company statutes. And it does say that directors may not be indemnified under various circumstances. It does prohibit them from receiving indemnity. But it makes a very unusual distinction. It said an officer who is not a director gets two additional rights. He gets full indemnity under state law, whatever existing provision would give him indemnity. That would include attorney's fees. And he gets the right to have a contract for indemnity. That's explicitly set forth in the statute. Now, Judge Daugherty rejected that argument entirely because looking at the statutory language, it's a pure policy argument, and it's a policy about which the Louisiana legislature explicitly disagreed with Iberia Bank. So she dismissed it out of hand. Well, the subsection F3 does still require that it can only be permissive if it's consistent with law. That's correct, and there's no law prohibiting indemnity. So in your theory, there is no limitation at all? For an indemnity contract between a bank and its officer, not a director. That's correct, Your Honor. And that's a policy decision that was clearly ‑‑ it's not an accidental decision. An officer who is not a director is a very clear ‑‑ and it reflects commercial reality, Your Honor. Bankers migrate the more successful they are, the more they want a contract, which insulates them from things like that. I'm quite sure that Iberia Bank has dozens of them that indemnify its superiors all the way up to Mr. I can't remember his name, the president. I'm sure they have dozens of them, Your Honor. It's a commercial reality. Now, the second thing I'd like to discuss is the Computer Fraud and Abuse Act. The statute, 18 U.S.C. A, that's little A, 5A, that's capital A, essentially makes it a crime for anyone to access a computer and damage it without authorization. Those words, without authorization, are in the statute. It's an element of the claim. Iberia had the burden of proving that. Now, this was hotly litigated throughout the trial, whether or not there was authorization or not. And the stories were very consistent. Iberia claimed there was no authorization but didn't have a witness. Mr. Broussard was grilled constantly. In fact, and I have brought an exhibit, Your Honor, that, per your instructions, is on 8 1⁄2 by 11-inch paper. It's an extract of the testimony by Mr. Broussard on these eight occasions. I don't know whether to promptly give it to the clerk. You can give it to me. Is there something you want us to look at while you're arguing? Hand it over. Go ahead and hand it over. We'll follow you as best we can. All of this is in the record, Your Honor, but the record is thousands of pages, and I just wanted to make the simple point and to substantiate it with this excerpt that on eight different occasions, and this doesn't count when he said it twice on the same page where he was being grilled. I think we get up to 14 if we do that. But on eight different occasions, which are documented here, Mr. Broussard testified again and again and again that he was authorized by Jason Fraim, and they never offered a witness, not even Mr. Fraim, who was actually, like Mr. Broussard, one of their employees after the merger, and whom there's no reason to think they wouldn't call to deny Mr. Broussard's testimony. When I read the trial record, though, this issue seemed like so many others. There were just completely different stories presented, that your client was protecting the younger at-will lenders he'd been loyal to forever and ever, while at the same time trying to push it towards a merger and then get scapegoated. That was sort of your theory of the case. That's right. But then the opposite was, no, look, during work time, using inside information, destroying files, recruiting people to another bank, that was just the other narrative. So why, as to even this issue, authorization or not, wouldn't it have been an issue that was for the trier of fact, you're the judge? And I'll just finish it as a question, because you say it was unrebutted, this testimony, but when you read all the cross-examination of him, I thought, maybe I'm wrong, that Mr. Little got up and said, no, you can't delete the files, and then the exhibit was introduced that the bank's policy was you can't delete the files, and then even your client had inconsistencies with his deposition. He at this time said, I didn't ask anyone for permission, but then by trial it becomes, I asked this man who's not here. Let me try to answer your question, Your Honor. First of all, the only witness that was asked, called and asked by Iberia, whether or not Mr. Broussard had authority, was Ross Little. But you could have called Mr. Frey, you too. Yes, Your Honor, I could have, but think of it in terms of the burden of proof, and realistically, Your Honor, I'm losing my, I've only got a couple of minutes left, but think of it in terms of the burden of proof. Why am I not entitled to use my client's testimony, as detailed, as extensive as it was, without calling someone who might contradict it? That's true, but then you're at the burden of the district court disbelieving your client, given the cross-examination and the exhibit evidence. At the risk, but Your Honor, this is what happened. It's not a credibility issue. The other witness they called said, no, I don't know, and they didn't call him. They relied on the general printed materials that Iberia had. They never talked about the actual facts of this merger, where the IT director from Tesh said again and again, clean up your disk. I've cleaned up my disk. Don't delete anything important, but clean it up. And Your Honor, if my client had wanted to damage the computer, wouldn't he have deleted the thousands of emails? Those were very powerful arguments, but go ahead. Your Honor, his deposition testimony did have some sort of friction with the trial testimony. Yes, Your Honor. You don't dispute that all this is factual, right? I'm sorry? You don't dispute the fact that all that's being asserted is factual? On this issue, no, that's correct, Your Honor. It's a question of fact, but it wasn't a credibility issue, and the preponderance was my client's repeated testimony, and the difference between asking permission and having already been told, Your Honor, that's what he said. I didn't have to ask permission. I had been told repeatedly. He explained that potential inconsistency in his testimony. So, Your Honor, I think that the lower court. You outlined three issues. You got two, the computer fraud and the attorney's fees, but you picked the bad in order. So, third one you didn't get to, but you obviously went to the ones you thought were most important. So, you've saved some rebuttal time. I have a feeling the other side is going to disagree with you. So, when you come back up, maybe you can cover the ground you didn't cover. Thank you, Your Honor. Good afternoon, Mr. Chief Judge. May it please the Court. On behalf of Iberia Bank, I want to address the issues that Mr. Durio brought up first and then perhaps touch on our cross appeal, if time permits. In the order that Mr. Durio presented them, he first addressed the issue of the attorney's fees cross appeal, the appeal on the cross appeal. So, Mr. Durio contends that he preserved the right, on behalf of his client, to pursue all attorney's fees pursuant to this change in control agreement's attorney's fees provision. So, the provision specifically says it's limited to arbitration. And their argument below, which Judge Doherty rejected, and here is that that provision was somehow expanded by a letter of counsel. I'm the counsel that supposedly wrote the letter that amended the change in control agreement to permit an acquiesce to a claim that they now make, and they may be low and was rejected, that they get all of their attorney's fees regardless of outcome, not just from arbitration, which we know is limited to $6,000 and change. So, the letter is at record excerpt number 137. It's at tab, I believe, 12, and it should be consulted with respect to this because the judge below did, in fact, deal with this. Mr. Durio's recollection is incorrect. The first motion for summary judgment on this issue, Judge Doherty rejected Iberia's position that the attorney's fees are limited. We moved for reconsideration. So, she certainly referred to her earlier ruling and said, on reconsideration, I was wrong. They are limited to the $6,000 or so, whatever that number might be that was incurred in the arbitration, and they're not expanded by the letter. She specifically dealt with the letter that they now rely upon. And notably about the letter, I'm totally fine with every provision of this, of course, but the phrase that's important is it says that we would consent to amendment of the Federal court proceedings to include the arbitration arguments that have been made so far, submit all of it to the Federal court proceedings, shut down the arbitration, and then in the Federal court proceeding reserve all rights to assert defenses to those claims except a defense that the matter is exclusively arbitrable in the AAA. So, we waived arbitrability, and then we said any claim that anybody makes, we're going to assert defenses to it. That's not an acquiescence that we were going to give up a defense that the CCSA attorney's fees provision was limited to arbitration at all. And so, Judge Doherty properly found, in fact, notably about the letter also, is that it envisions that documents envisioned above will be prepared, and what Mr. Durrio doesn't point out is that we then submitted an amendment to the employment agreement, the Iberia Bank Employment Agreement, which is not even what we're talking about here in terms of the arbitration fees that are recoverable. The CCSA did not get amended. So, with regard to whether the attorney's fees should be recoverable at all under the Louisiana Statute Section 286 of Title VI, the case that's before you, Judge, would be the first case in Louisiana that would award attorney's fees to a breacher of fiduciary duties. It would be the first case of a corporate officer who has been found to have intentionally and willfully violated his fiduciary duties, to have intentionally and willfully violated those duties in the contractual sense and in the legal sense, and could recover any fees as a result of that. It's tantamount to saying, if I've got an agreement with my employer that says that I have permissive indemnification, which is what this is about, it's not mandatory, and I can get recovery, if anybody brings a claim against me, then I could walk in as the banker to the branch bank, hand a burlap sack to the teller and say, fill that up, and then walk out, and then afterwards if the bank comes after me for embezzlement or whatever that may be theft, I could call on the bank to defend me, and if the provision is broad enough, I could call on the bank to pay my damages if I'm found liable for that embezzlement. That's what the holding of the court would be if Mr. Durio's argument holds the day, which in fact was the argument that was... You haven't given us a case that interprets, especially the subsection F3, the way you want it to be interpreted, which looks like it would make that provision superfluous. Right. The way I read your brief, it's saying, well, there's no distinction between officer and director, and you give one site to Quinlan, a footnote in Quinlan, that's just speaking about 286 generally. You're absolutely right, Judge. There's been no case that's interpreted... So why aren't you asking us to certify this if it's all a public policy question? I think actually that would be a good outcome, is to certify this, because the issue is murky. There has been no decision in any Louisiana appellate court other than Quinlan referring to it, and I would agree with you. It's not a holding of the case. It's simply a reference to it. What do you think consistent with law means? I believe consistent with law means there's a circular interior reference in Section 286 that says that provisions that apply to directors might apply also to officers. So that's some perhaps imperfect legislative drafting that went on there. It's not the model, certainly, of legislative drafting. So there's that provision. But if you go outside the statute, consistent with law has to mean look at other laws. Then you look at Title 12, Section 83, the prior corporate code, which applies to all corporate officers and says you can't do this. You can't indemnify for self-dealing. It may be a very small amount in this case, but it's very consequential. That's exactly why we appealed it. Pardon me? That's why you appealed it? That's why we appealed it. But I would have expected you to ask us to certify it because I don't read the text to be as clear as you suggest that it is in terms of officer and director, neither one having permissiveness. Right. And, Judge Higginson, I think our preference would be that you find in our favor because I think that you can go outside of this provision to Title 12, the former Title 12. It's been replaced since. But at the time of these events, it was in place. And Section 83 of that provision says you can't do this. You can't contract away fiduciary responsibilities. And so that's the law that 283 has to be interpreted consistent with. And also, if you look at the statute on savings and loan directors and officers, they're not entitled to this. So all of a sudden, if you got the job at the savings and loan down the street, you're in a worse position because these contracts are invalid. My contrary notion to certifying, which I will admit to not being a fan of for a lot of prudential reasons, is that, you know, this doesn't come up that often. I mean, there's no law on it often because it doesn't present itself in a context to where there is a case that has to decide it or, you know, it resolves itself. So to flip for me, yeah, there's no law on it, but there may be a reason. So, ergo, you know, is it prominent enough to certify so it drives other situations which may or may not come and which otherwise may take years, literally, for this. That's an answer. So in a case like this that's commercial, does that really resolve sort of the issue between the parties if it's in another decade? You get my drift? Yes. I mean, I know you would prefer we rule in your favor. I got that part. Right. I think you're saying it to the choir. I guess I'm just wondering out loud whether the issue about which there's not much law percolates enough such that it is sort of this pulsating issue that's, you know, versus somebody just having to decide. Right. It may be minor, but I'm just saying. Well, by virtue of the fact that there are no cases on it, certainly it doesn't come up that often. And I think by virtue of the fact that typically well-run banks don't write provisions like this in the sense that they don't write provisions that self-indemnify their officers and directors in any circumstance with an outcome agnostic provision as we have here. This seems curable by drafting to me somehow. Well, the situation here is, just to be clear, this was a provision inherited by Berry Bank. This was a provision in the change in control agreement that was with the Tesh Bank, which was the merge target. And so that's like many banks. In Louisiana, it started small and it got bigger, and so the drafting might have been carried over. I'm not suggesting that there was anything untoward in the history of that. But as Judge Higginson pointed out, it could have large implications. So I'll move on to talk about the CFAA claim. This is a fact-specific finding. Judge Hanna listened to the evidence and found, as a matter of fact, that Mr. Broussard had deleted these. Just a quick question. Yes, Judge. It's not supposed to be anything, but how was this bifurcated? This occurred during the time when Judge Daugherty was leaving the bench? Is that how this got sort of both of them doing part? It did. It occurred in the summer of 2014. Judge Daugherty was retiring, and we all agreed to try it to Judge Hanna. That's not germane to what we answer, but it got a little squirrely to me trying to figure out how the one ruling was by one judge and the other was the other. But I know the circumstances. Right. That's what happened. And we had a full hearing of five days with Judge Hanna on these issues. As Judge Higginson pointed out, the record is thick with findings on this. And I think to put a finer point on Judge Higginson's point to Mr. Durio, there was extensive cross-examination of Mr. Broussard, which we conducted. And part of it is in the excerpt handed to the Court, and it includes the question and answer on the second page of his handout. He cites to page 1397. I don't think that's the ROA reference, but that is probably the transcript reference. And it's there that I presented to Mr. Broussard his deposition testimony in which he, contrary to his prior testimony under oath on direct, contradicted himself and said that he had walked into a meeting, announced that he had deleted, and Mr. Frio, in Mr. Broussard's own words, announced that he had done it too. That's not advance authorization, and that's in Mr. Broussard's own words. It wasn't necessary to call Mr. Frio if you've got that. You also have Mr. Broussard testifying, and I've got the ROA reference to this. Specifically at ROA 5922, quote, I did not have permission, no. That's not included in the excerpt that I could find in my brief reading of this. So this was a credibility finding by Judge Hanna in light of those contradictory statements where he found that the Computer Fraud and Abuse Act had, in fact, been violated. And he also pointed, as Your Honors pointed out, to the Iberia Bank Information Security Agreement, which Mr. Broussard signed well prior to his deletion of any materials in which he certified that he would do no damage to the files, and then he did it. And he did it not only before the merger, but he did it after the merger. So after he became an Iberia Bank employee, when Mr. Frio was no longer his supervisor, he did more deleting and causing damage, as the judge found below, to those files. I'll go ahead and address the intentional interference claim. The issue there that was a claim dismissed on summary judgment when Mr. Broussard presented that claim as a counterclaim amendment in the course of the case, the issue there is that intentional interference is thwarted. It's a very unfavored cause of action, a disfavored cause of action in Louisiana, as all the cases say. But the cause of action is undermined and thwarted when you show a defense of a legitimate business interest. What's the best case giving us the elements of that claim? So you can look at Junior Moneybags, the case that we cited from this court, 1992. It's 970F2-1. You know, just trying to dig down into implied versus actual malice, it seemed like the malice element would sort of always be this flip side of the same coin of whether they had a legitimate business interest, but it's not so? No, those are separated. They're separated, and the district court made findings as to both? The district court made findings primarily that we had a legitimate business interest and then said that there was no— So once he's made that finding, why is it relevant to decide the malice-vadrine question? It looks like it's an affirmative defense that, according to the— because, again, it's something that's somewhat arcane. But if you look at that, Junior Moneybags, and also JCD Marketing, which don't have the exact site, but we cited that in our brief, those cases lay out some of the elements in rejecting the intentional interference claims. And so when the defendant can show a legitimate business interest, then the courts just don't get to actual malice. And in this situation, legitimate business interest, it's a little bit all over the place, but the attack has been on a litigation hold letter that Counsel for Iberia Bank sent to the JD Bank, which is where all of these team members have been lifted out to. And the litigation hold letter said, Preserve your materials because we filed an arbitration. And it attached the arbitration itself. They point to that as an unnecessary extension of that hold letter. And the trial court found that that's a legitimate business activity to preserve records. Of course, it's a routine activity and, some would say, a best practice. So that legitimate business interest, in fact, finding, was not even appealed by Mr. Broussard. They didn't contest that. And so by not contesting it, we contend that they waived it. They say twice in their brief that the ruling, the summary judgment ruling on the business tort, meant that evidence was excluded at trial. Did you run that down? Was there ever an objection, an offer of evidence, an objection or proffer? There was never a proffer. In fact, I don't recall any proffer, except maybe in one instance it did not pertain to this. So that complaint was made pretrial that this would occur, and it didn't occur. The issue of whether Iberia Bank harbored malice towards Mr. Broussard, it didn't find a place in the claims that we were making at trial, but there wasn't an attempt. Had that occurred, then their larger arguments about a breach of contract could have been implicated if evidence had been kept out as to malice when the whole argument is whether it's this gentleman from Iberia Bank sort of alienating everyone or it's Mr. Broussard trying to sort of get the $600,000 of payments. Right. But therefore you're claiming there was no evidence excluded based on the business tort. And I would say it didn't fit because the claims that Iberia Bank brought and put on were about breach of fiduciary duty and breach of contract. They were about events that took place with a full stop prior to the litigation being filed. This claim is about why did you sue me and why did you send a letter to my potential employer saying that you had sued me. Yeah. And so there wasn't an attempt to put it on, and therefore there wasn't a preclusion. And as far as actual malice is concerned, that JCD marketing case is the source, and there are multiple other cases that say it is actual malice that you have to find. It's not inferred malice. The reliance on Vadreen is curious because Vadreen was a case decided by Judge Doherty in which it was a malicious prosecution case. So it's a case that does say that you can infer malice where you're bringing a malicious prosecution case after the proceeding is over and after you have won. In this case, Mr. Broussard did not win. And, you know, oddly enough but perhaps notable is that Vadreen was dismissed by Judge Doherty and did not reach trial. There was no finding. Before I sit down, I would like to move to some of the other issues that we presented. But I'd like to point out that while Mr. Broussard on brief has contested the breach of contract finding, that's the finding that permitted Iberia Bank to recover the $391,000 change in control payment, they did not appeal the breach of fiduciary duty finding, which Judge Hanna found that Mr. Broussard had independently breached fiduciary duties and independently gave Iberia Bank a right to recover that money. And so by waiving that, it really hollows out and guts their contract breach claim. And the contract breach came as to Iberia. What was the exact language, the just cause language? Is there any argument to the fact that it related to once the merger was terminated only? You probably know it verbatim. You mean the employment agreement that Iberia Bank had with Mr. Broussard? Yes. So I don't know it verbatim. Would there be an argument that he's entitled to the money once the merger happened, period, just no more compensation? So the language does, in fact, set a trigger point, and it's not the merger. It's the success of the consolidation of the banks. And so we had Mr. Todd Guidry take the stand and testify, and he was in charge of that process of rolling out the bank's branches together to create Iberia Bank branches out of cash, merge the systems. And he said that as of July 3rd of 2014, when Mr. Broussard was terminated, that process had not been completed. And so by that time, we hadn't paid the success bonus, and the contract does say that if you're terminated prior to the consolidation event, then you don't get any further compensation. It also has just cause provisions which cover this but essentially say if you're disloyal, if you don't fulfill the provisions of this contract, then we have just cause to terminate you. Your cross-appeal on the unfair trade. Right. If the district court used inartful language about last resort, couldn't it be said that the district court was also saying there was no motive to harm? So it could have been, but it didn't reach that because it said that this is a last resort statute, which we've cited the multiple cases that don't hold as much. In fact, this court has held that LUTSA, L-U-T-S-A, the Trade Secrets Act, and the L-U-T-P-A are compatible and that you can recover under each. That's the computer management assistance company case from 2000 that we cited. So we think he was wrong legally on that. And what that does to us, and Mr. Broussard made a point in their brief that, well, you're just trying to extract more and triple the damages. No, we did not actually notify the Attorney General of a desire to seek sanctions in the form of treble damages. So we are not seeking treble damages out of that. But again, we would be entitled to seek recovery of our attorney's fees and we're entitled to have that heard by the court if LUTPA allows it. But I just want to make clear that we're not seeking treble damages, but the finding legally that we were not entitled to seek a LUTPA claim because we have these other claims is not supportable. And I think I've reached all of my issues.  Thank you, Your Honors. Back to you, Mr. Duryea. Thank you, Your Honors. The best case, Judge Jigginson, is to look at for the elements. Actually, it's a case that they cite on unfair trade practices, but on intentional interference as a recovery. Beam v. Deca Systems, that's B-H-I-M v. Deca Systems, is cited on page 26 of the yellow brief, Your Honor. It's also cited in their brief, ironically. It talks about the malice element. It talks about unfair trade practices. It's a jury recovery where the jury inferred malice from all the facts and circumstances in the case. I think it's a good case. It also shows that— I think it shaves two substantial aspects, one by not challenging the fact, finding that there were legitimate business interests as opposed to focusing on malice, and the other being that instead of suggesting error in the contract breach, there was this independent finding of breach of fiduciary duty. Well, I didn't contest their finding of breach of fiduciary duty, but the point is the same, Your Honor. There's no damages from either one. The bonus in the just cause language had nothing to do with the original Tesh contract. It said if we get a merger, you get this money, and they got the merger. Your Honor, I mean, just thinking about fiduciary duty, you breach that, you don't disclose to them that you're working to get a branch office to fight the very company you're supposed to owe loyalty. Why wouldn't Tesh want to know that information, and then they wouldn't pay the $391,000? Because Tesh wanted the merger alone. All they had was a best efforts obligation. That may be true, but the bonus money is conditioned on fiduciary duty. Your Honor, there's two bonuses. I know there are two bonuses. My client was not an employee of Iberia at the time. He was only a Tesh employee, and there was a difference. The damages was focused just on the $391,000 that Tesh paid. Right. The claim they made in this case to recover was under the $394,000. We made a claim to recover the success bonus, and you can't confuse the two. I haven't. Well, what they have suggested is that we breached our fiduciary duty, which is why we don't get the successful conversion bonus, even though they got a successful conversion and paid other employees with exactly the same contract. We're paying them, in fact, before they terminated my claim. But to return, Your Honor, to the most important part of the case so I can try to get this done in the last few minutes, the intentional interference claim, Your Honor, is very important to understand. They contended all through the district court that there were no other cases no court had ever found. It was the same argument you heard a minute ago. This will be the first case. Well, Graham was a recovery after a jury verdict on intentional interference with business relations. It was the first case. It was in 1895. It's cited in Douceau, a Fifth Circuit case, Wisdom, Pollock, and Gee, which was remanded so they could go back to court with it. The business about legitimate business purpose, first of all, it's not an element of the claim, and it's not a defense. What they're referring to is one aspect of what we contended showed malice. This starts with a dispute between Tesh and Iberia as to employees, as to the lead lender, Mr. Caswell. Iberia says, I want him fired. He's not going to work for us. Broussard says, He's our best lender. We got goals to meet just to make the merger go through. It's a painful narrative. That was fully presented to the court, those two different views. But no, no, it was not, Your Honor. That was not fully presented because we couldn't offer evidence. We couldn't offer witnesses. Well, that's what I wanted to ask, because you say that twice in your brief, but you don't give a record cite. Where in the trial did you say, Here's evidence I want to offer, and the court said, I decided that. You can't put it in. I have to do that when the court has dismissed the claim? Pre-trial? Well, you've got to put a proffer of evidence in if you want to object about evidence being kept out. I didn't, Your Honor. I'm saying it changed the scope of the evidence at trial. I have no right to offer evidence of malice after the claim has been dismissed. It's the only thing, malice was relevant only to my claim that was dismissed. It wasn't relevant to anything else. I have no right to stand up. When I read the trial record and I looked at the argument you were making for malice, it was based on, it was presented, it was the Iberia Bank's treatment of the four or five lenders, not giving them compensation packets. That wasn't malice, Your Honor. I was trying to show that there was no damages. My client didn't run those people off. He followed them. That's what it was relevant to. And it wasn't all of our evidence on malice. We had other witnesses. Iberia Bankers from other merger disputes that resulted in litigation. We had plenty of other evidence, but I couldn't put any of it on because the scope of evidence at trial was changed dramatically by this pre-trial ruling. And I'm sorry, Your Honor, as I've gone over time. Thank you. All right. We appreciate your argument, Mr. Durrio, and also Mr. Lee, in this case, an interesting case. Thank you, Your Honor. Consider the case submitted, and we'll work our way through it. May I make a request for a telephone notification? Sorry? I think I'm supposed to make a request for a telephone notification when there's been a ruling. Is that right? I'm not sure about that. I will refer you to the clerk. Yes, Your Honor. Thank you. They will take care of it. Thank you. This completes the cases set for argument today.